NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-2867

_____

UNITED STATES OF AMERICA

v.

BRENT KEVIN HERCULES ANTOINE,

Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 2-10-cr-00229-003)
District Judge: Honorable Maurice B. Cohill, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
January 12, 2015

Before: AMBRO, FUENTES, and ROTH, <u>Circuit Judges</u>

(Opinion filed March 25, 2015)

_____

OPINION[*]

_____

AMBRO, <u>Circuit Judge</u>

Brent Antoine appeals his convictions of conspiracy to commit access device

fraud, 18 U.S.C. § 371, possession of fifteen or more counterfeit or unauthorized access

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

devices, *id.* § 1029(a)(3), and three counts of aggravated identity theft, *id.* § 1028A(a)(1). He argues that the District Court erred in denying his motion to suppress an arresting officer's out-of-court identification of him and in permitting the same officer to identify him in court. Because the identifications were sufficiently reliable to justify their admission at trial, we affirm.

## I. Facts

In March 2010, Robert Dean, an asset protection associate at the Walmart in Carnegie, Pennsylvania, called 911 to report that an unspecified number of people had just attempted to buy electronics with multiple credit cards that were rejected. Dean watched the men get into a Dodge Caravan; he took the license plate number and relayed what he had seen to Sergeant Stephen Fury, the officer who answered the call.

Two minutes after the call, Fury came to the parking lot of the shopping center where the Walmart was and stopped the van. Officer Douglas Burek arrived soon after. They learned that the van was rented, and the rental agreement did not authorize any of the occupants to drive it. Fury and Burek therefore ordered the men out of the van so that they could tow it away for the rental company. Antoine left the van in a well-lighted area near the exit of the shopping center, where he told Burek his name, birth date, and address.

Fury and Burek told the occupants to retrieve their belongings from the car; one passenger took a black duffel bag from the trunk, but a locked safe in the van remained unclaimed. After the stop, police obtained a search warrant for the safe, which contained

2

gift cards from various retail stores and the 39 credit cards used to purchase them. Further investigation revealed that the credit cards were fraudulent.

A few days after the stop, Secret Service Special Agent Michael Radens interviewed Burek. Radens presented Burek with photographs of suspects believed to have been in the van Fury had stopped and asked if Burek recognized anyone. After seeing a photo of Brentt Antoine (not the defendant, whose first name only has one "t"), Burek said that he was not sure if it depicted one of the people he had stopped but that it might. For reasons the record does not disclose, Radens recorded Burek's response as a positive identification, and Brentt Antoine was arrested. Eventually the mistake was cleared up, and Brentt Antoine was cleared.

In January 2011, Radens showed Burek another photograph, this one of the defendant Brent Antoine. Burek identified Antoine, and he was arrested on the strength of Burek's identification.

Before his trial, Antoine moved to suppress Burek's out-of-court identification as the result of an impermissibly suggestive procedure, and he moved to preclude Burek from identifying Antoine in court. The District Court held a hearing and denied Antoine's motions. Antoine moved for reconsideration after the Government's case-in-chief, and reconsideration was also denied. A jury convicted him of all counts, and he appeals.

## II.    Discussion

"[W]e review a decision to admit identification testimony over an objection for abuse of discretion." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006).

3

Identification testimony violates a criminal defendant's due process rights when it is both "unnecessarily suggestive" and "creates a substantial risk of misidentification." *Id.*

The District Court held—and the Government does not contest—that the January 2011 identification procedure was unduly suggestive.[1] We need to decide only whether the District Court correctly ruled that the identification was sufficiently reliable to justify its admission at trial. In determining whether a suggestive identification is reliable, we consider: "[(1)] the opportunity of the witness to view the criminal at the time of the crime, [(2)] the witness' degree of attention, [(3)] the accuracy of the witness' prior description of the criminal, [(4)] the level of certainty demonstrated by the witness at the confrontation, and [(5)] the length of time between the crime and the confrontation." *Young v. Conway*, 698 F.3d 69, 78 n.6 (2d Cir. 2012) (alterations in original) (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

Although some facts here argue in favor of suppression, this is not one of the "extraordinary cases that identification evidence should be withheld from the jury." *United States v. Jones*, 689 F.3d 12, 18 (1st Cir. 2012). That when Burek viewed Antoine on March 3, 2010 it was after nightfall, and that Burek's correct January 2011 identification took place over a year later, both weigh in favor of suppression. However,

---

[1] No doubt the identification procedure could and should have been better: no testimony suggests that Radens showed Burek an array or a series of pictures or that Burek had reason to doubt that Radens was trying to identify Antoine. Confirming any suspicion that the January 2011 procedure was suggestive, a similar interaction between Radens and Burek in March 2010 led to the arrest of the innocent Brentt Antoine. Where, as here, there was no emergency requiring Burek to make an identification on the spot, "it is little to ask that law enforcement take some additional time and conduct a less suggestive identification procedure." *Brownlee*, 454 F.3d at 138 n.4.

4

the following considerations developed during Burek's direct and cross-examinations at the suppression hearing trump those factors: (1) Burek viewed Antoine's face at close range for three to five minutes using a flashlight and floodlights in a parking lot lit by overhead lights; (2) the observation took place in calm circumstances by a trained and attentive law-enforcement officer; (3) Burek's written report completed soon after, while general, was accurate in its description of Antoine; (4) Burek's confidence in his January 2011 identification was absolute; and (5) Antoine's name matches that given to Burek on the night in question. And although Radens noted that Burek had positively identified the wrong suspect on March 24, 2010, Burek testified at the suppression hearing that he actually told Radens that this photograph of the incorrect individual "could be [Antoine], but [he] c[ouldn't] say for certain" and that "[i]t may [have] be[en] a different time in his life, but it wasn't what he looked like that night." Mot. to Suppress Hr'g Tr. 84:1–3 Aug. 21, 2012, ECF No. 202. The District Court concluded that Burek's testimony at the suppression hearing was credible, and we must defer to this finding. Moreover, defense counsel vigorously cross-examined Burek at trial on the reliability of the January 2011 identification, and the District Court specifically instructed the jury on how to weigh ID evidence. Accordingly, we affirm the District Court's decision not to suppress the out-of-court identification.

Burek's in-court identification is admissible unless "the 'very substantial likelihood of misidentification' was 'irreparable,' despite the defendant's opportunity to cross-examine the witness about the accuracy of the identification." *United States v. Holliday*, 457 F.3d 121, 125 (1st Cir. 2006) (quoting *Simmons*, 390 U.S. at 384). For the

5

same reasons that Burek's January 2011 identification was reliable, we cannot doubt that his in-court testimony rested on an independent recollection of talking with Antoine for three to five minutes in an illuminated area under calm circumstances. *See United States v. Crews*, 445 U.S. 463, 473 (1980).

\* \* \* \* \*

The January 2011 identification, though unduly suggestive, was reliable, and thus the District Court properly admitted it. Nor do we believe any pretrial identification unduly influenced Burek's in-court identification. In this context, we affirm.